Matter of Kevin G. (2007 NY Slip Op 51473(U))

[*1]

Matter of Kevin G.

2007 NY Slip Op 51473(U) [16 Misc 3d 1119(A)]

Decided on August 3, 2007

Family Court, Queens County

Richardson-Mendelson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 3, 2007

Family Court, Queens County
In the Matter of Kevin G. A Child Under Eighteen Years of Age Alleged to be Abused by Katrina C. Kevin G.
Na- 9640/06

Edwina G. Richardson-Mendelson, J.
On June 2, 2006, the Administration for Children's Services (hereinafter, "ACS") filed a petition alleging that the respondents Katrina C. and Kevin G. abused and severely abused their six-month-old child, Kevin G., born November 28, 2005. The petition alleged, in pertinent part, the following:
1. The respondents severely abused the subject child, Kevin G. (Age 6 months) in that:
a. According to Dr. Saqiba Kahn, attending pediatrician at Jamaica Medical Center, on or about June 1, 2006, the subject child Kevin G. (age 6 months) was diagnosed at Jamaica Hospital with a broken right clavicle, second degree burns on the backs of both hands, and a skull fracture on the right side of his head. Dr. Kahn also stated that the subject child was dehydrated.
b. On or about June 2, 2006, Detective Figueroa from Queens Special Victims Unit, informed the undersigned caseworker that on or about June 1, 2006, the respondent father stated that he held the subject child's arms next to the space heater long enough to burn the child. The respondent father also stated that he punched the subject child real hard several times about the head and neck, while the respondent mother was in the same room. The respondent father also stated that he tied the subject child's hands together with a rubber band.
c. On or about June 1, 2006, Ms. Sarah Abrams, a social worker with Jamaica Medical Center, informed the undersigned caseworker that the respondent father informed her that he tied the subject child's wrists together with rubber bands, and that he hit the subject child. He further stated that he no longer wishes to care for the child.
d. On or about June 1, 2006, Ms. Sarah Abrams informed the undersigned caseworker that the respondent mother admitted that she observed the respondent father hit the subject child numerous times on May 31, 2006, and in the past. She further stated that the respondent father [*2]tied the subject child's arms together with a rubber band.
E. On or about June 2, 2006, Detective Figueroa informed the undersigned caseworker that on or about June 1, 2006, the respondent mother admitted that she observed the respondent father punch the subject child at least 20 times over the past few days, she observed the respondent father put the baby's arms next to the space heater. She further admitted that she observed the respondent father tie the baby's arms with rubber bands. She also stated that she shook the baby real hard several times.
The petition claims that as a result of the foregoing alleged acts of the respondents, the child is abused within the meaning of Family Court Act §1012(e)(ii), and that aggravating circumstances exist pursuant to Family Court Act §1012 (j) making this child also a severely abused child within the meaning of Social Services Law §§384-b(8)(a)(i) and 384-b(8)(a)(iii). The petition also alleges that the child is neglected pursuant to Article 10 of the Family Court Act.
Procedural History
On June 2, 2006, the day the petition was filed, the court conducted a hearing pursuant to Family Court Act §1027. At the conclusion of the hearing the court remanded the child to ACS for foster care placement based upon the serious nature of the allegations and the imminent risk of further harm to the child if the child were returned to the care of the respondents. Although this Court granted the foster care remand application, because of the serious injuries he sustained, the child remained hospitalized for some time after the filing of the petition.
On October 10, 2006, in Queens County Supreme Court, the respondent-mother pleaded guilty and was convicted of reckless endangerment in the first degree, a class D felony, in violation of Penal Law §120.25. The Court has not been provided with sentencing information to date, but a review of New York State Domestic Violence Registry records indicates that the Supreme Court entered a full stay-away order of protection on behalf of the child against the respondent-mother prohibiting her from having any contact with the child. That order of protection expired on June 25, 2007. On June 25, 2007, the Supreme Court entered a further stay-away order of protection on behalf of the child against the respondent-mother, which order expires June 24, 2012. The current Supreme Court order of protection is subject to Family Court orders of visitation and custody. On July 24, 2007, this court entered an order of protection requiring the respondent-mother to refrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense against the child and permitting the respondent-mother to have strictly supervised visits with the child.
On October 20, 2006, in Queens County Supreme Court, the respondent-father pleaded guilty and was convicted of assault in the second degree, a class D felony, in violation of Penal Law §120.05. On or about October 23, 2006, the respondent father was sentenced to a period of four years' imprisonment and a nine year full stay-away order of protection was issued against him, which prohibits him from having any contact with the child.
On December 21, 2006, ACS moved, pursuant to CPLR §3212, for summary judgment, seeking a finding of severe child abuse pursuant to Family Court Act §1012(j) and Social Services Law 384-b(8)(a)(i) and 384-b(8)(a)(iii). The respondent-father submitted no responsive papers. The child's law guardian submitted papers in support of the motion. The respondent-mother submitted papers in opposition to the motion.
[*3]Discussion
Summary judgment pursuant to C.P.L.R. §3212 is an appropriate procedure to utilize in Family Court Act article 10 child protective proceedings. Although the Family Court Act contains no specific provisions for the use of summary judgment, Family Court Act §165(a) provides that "the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved." The Court of Appeals has held that in child protective cases where there are clearly no substantial triable issues of fact, the family court may dispense with a fact-finding hearing and summary judgment may be used. Matter of Suffolk County DSS o/b/o Michael V. v. James M. 83 NY2d 178 (1994).
The issues to be determined in this matter are whether the subject child is abused pursuant to Family Court Act §1012(e) and/or whether the child is severely abused within the meaning of Family Court Act §1012(j) and Social Services Law §384-b(8)(a)(i) and/or Social Services Law §384-b(8)(a)(iii).
Family Court Act §1012(e) defines an abused child as
a child less than 18 years of age whose parent or other person legally responsible for the child's care either (i) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ, or (ii) creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ.
Family Court Act §1012(j) states that aggravating circumstances exist if a child is deemed to be severely abused as that term is defined in Social Services Law §384-b. Social Services Law §384-b(8)(a)(i) defines a severely abused child as one who has been found to be an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, which result in serious physical injury to the child as defined in section 10.00 of the penal law. Section 10.00 of the penal law defines serious physical injury as physical injury which results in a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ. Social Services Law §384(8)(a)(iii) alternatively defines a severely abused child as one whose parent has been convicted of one of a number of delineated criminal offenses, including second degree assault.
Social Services Law §384-b(8) further requires that to sustain a finding of severe abuse, there must also be proof submitted that the agency has made diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interests of the child, and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future. The failure of the Court to make such findings at the fact-finding stage in Article 10 severe abuse child protective proceedings has been deemed to constitute reversible error. See Matter of Latifa C., 2006 Slip Op 8974; (App.Div. 2d Dept 2006) where a Family Court finding of severe abuse was reversed as a result of the agency's failure to submit relevant proof and the Court's failure to make appropriate determinations regarding whether the agency made diligent efforts to strengthen and [*4]encourage the parental relationship when not detrimental to the best interests of the child.
Pursuant to Family Court Act §1046(b), the petitioner has the burden to establish abuse or neglect by a preponderance of the evidence. Findings of aggravated circumstances and severe abuse pursuant to Family Court Act §1012(j) and Social Services Law §384-b require clear and convincing evidence. See Family Court Act §1051(e). Both the preponderance and clear and convincing standards require less than the "beyond a reasonable doubt" standard required for convictions in criminal proceedings.
The instant motion for summary judgment was supported by the following documentary evidence: a copy of the verified Family Court child abuse/neglect petition dated June 2, 2006, copies of the criminal complaints filed against the respondents in this matter, copies of Superior Court informations and waivers of grand jury for both respondents, copies of certified transcripts of both respondents' guilty pleas entered on separate dates before the Honorable Pauline Mullings, Justice of the Supreme Court, Queens County, copies of a sealed certificate of disposition certifying the respondent-father's conviction by guilty plea on October 20, 2006 on a charge of second degree assault pursuant to Penal Law §120.05 and his resulting sentence of imprisonment, and copies of orders of protection issued by the Supreme Court against both respondents. Also annexed to the summary judgment motion are voluminous certified and delegated medical records of the child's in- patient hospitalizations at Jamaica Hospital Center and Staten Island University Hospital.
Findings as to the respondent-father:
The respondent-father pleaded guilty to, and was convicted of committing, second degree assault as that term is defined in Penal Law §120.05(8) against his six month old son, Kevin G. Second degree assault is one of the crimes delineated in Social Services Law §384(8)(a)(iii) upon which a finding of severe abuse may be predicated. Because second degree assault is one of the delineated crimes upon which a finding of severe abuse may be predicated pursuant to Social Services Law §384(8)(a)(iii), the conviction of the respondent-father on a charge of second degree assault obviates the need for a fact-finding hearing in this case. The conviction was upon proof beyond a reasonable doubt, a higher standard of proof than the clear and convincing evidence standard required for a finding of severe abuse pursuant to the Family Court Act and Social Services Law and therefore, there is no question that the appropriate standard of proof has been met.
The court notes that the assault conviction is bolstered by the medical records in evidence. The medical records reflect the very serious nature of the child's injuries. These injuries include a skull fracture, broken clavicle, burns to the child's hands, and injuries to the child's wrists caused by being tied with rubber bands. Photographs of the child taken by Jamaica Hospital on June 1, 2006 show burns with skin removed from both hands and numerous bulging blisters on both hands. The photographs also show ecchymosis, 2-3 cm, to the left frontal area of the child's forehead and an abrasion to his inner lower lip. Jamaica Hospital records show that the child also suffered an acute fracture to the distal third of the right clavicle. Social work notes from Jamaica Hospital reflect that both parents brought the child to the hospital and reported that they tied the child's hands with rubber bands for "some time" three weeks prior to the hospital admission. The parents reported that they felt overwhelmed with parenting the child and wanted to give the child up for adoption.
Records from Staten Island University Hospital, to whose Burn Center the child was [*5]admitted on June 1, 2006, show that the child was diagnosed with 3rd degree burns to both palms, retinal hemorrhages, clavicle fracture, seizure episode with jerking motions of the feet, hands, and head, as well as blank staring for eight minutes. The records indicate that the child was admitted to the Burn Center Intensive Care Unit and later admitted to the regular pediatric unit for care of skull and clavicle fractures and wrist wounds. A sub-dural hematoma was also noted in the records.
While the agency did not assert that it exercised diligent efforts to encourage and strengthen the parental relationship between the respondent-father and the child as required by Social Services Law §384-b(a)(8)(iv), it is clear that based upon the unique circumstances of this case, including the issuance of a full stay-away order of protection by the criminal court for a period of nine years, no efforts were required in that the exercise of any such efforts would indeed be detrimental to the best interests of the child. It is also clear that no efforts to rehabilitate the respondent-father could possibly be effective to strengthen and encourage the parental relationship. The legislative intent of the child protective laws in this state is to achieve prompt permanent homes for children in foster care who cannot successfully be reunited with their biological parents. Social Services Law §384-b(1)(b). There is no likelihood whatsoever of reunification between the respondent-father and the child in the foreseeable future in light of the nine-year order of protection.
It is also important to note that the respondent-father submitted no answering affidavit in opposition to the instant motion for summary judgment. Although the evidence submitted in summary judgment motions is to be viewed by the court in the light most favorable to the party moved against (see Weiss v. Garfield 21 AD2d 156 [3rd Dept. 1964]), the failure of an opposing party to respond to a key fact attested-to in the summary judgment moving papers will be deemed by the court to be an admission of such fact and will result in a concession that no question of fact exists. Kuehne & Nagel, Inc. v. Baiden 36 NY.2d 539 (1975).
Findings as to the respondent-mother:
The respondent-mother opposes the summary judgment motion, indicating in her affidavit in opposition to the motion that issues of fact exist. She argues that a finding of severe abuse requires a finding of serious physical injury to the child and although in the criminal proceedings she admitted to first degree reckless endangerment of her infant child, she never actually admitted to injuring the baby. She admitted that she was "acting in consort [sic] with another person, on or between May 8, 2006 and June 12, 2006 when, under the circumstances, evincing a depraved indifference to human life, [she] recklessly engaged in conduct which creates a grave risk of death, in that [she] failed to seek medical attention for [her] gravely injured son, Kevin G., and [she] failed to prevent repeated assaults on Kevin G., by the defendant[.]" Her affirmation in opposition to the motion for summary judgment asserts that a finding of serious physical injury was never made in the criminal proceedings and that the she "does not want the court to solely rely on medical records for the entry of a summary judgment without an opportunity to object, to cross examine the maker of the records, and call [her] own expert witness to contradict the findings.'"
The respondent-mother asserts that her situation is similar to that of the respondent in Matter of Edwin L., 3 Misc 3d 1108 (Kings Co. Fam. Ct. 2004), a severe abuse case in which, despite the respondent-father's prior conviction on first-degree reckless endangerment, the Family Court declined to grant summary judgment because the respondent-father's Criminal Court [*6]allocution did not address whether his actions caused serious physical injury to the child. The ruling in the Edwin L. case is one of a trial level court and, therefore, it is entitled to be considered by this Court as persuasive authority. However, the Edwin L. case is clearly distinguishable from the instant case in that in Edwin L., the court specifically noted the lack of detail in the criminal court allocution, regarding it as "minimal." In the Supreme Court criminal allocution in this case the respondent-mother admitted to doing specific things which resulted in serious physical injury to her child. She admitted in the criminal proceedings that she failed to obtain medical attention for her "gravely" ill child. She further admitted in the criminal proceedings that she failed to prevent her child's father's repeated assaults upon her infant child. There is no doubt whatsoever in this case that the child suffered serious physical injury.
Contrary to the respondent-mother's assertions, the instant case is less similar to Edwin L. and more akin to the circumstances found in the case of Matter of William S. and Xenia S., 12 Misc 3d 1157 (Kings. Co. Fam. Ct. 2006), a more recent decision issued by the same trial court judge who decided Edwin L. In William S., the court granted summary judgment based upon a criminal court conviction of first degree reckless endangerment when the child's mother and step-father (a person legally responsible for the care of the child) admitted in criminal court to failing to seek prompt medical attention for the child's injuries. The injuries in William S. included a bone-deep laceration to the child's chin, multiple bruises, burns, and marks about his body, for which respondents failed to seek timely medical attention. In that case the court entered findings of severe abuse without requiring that the respondents actually admit to inflicting injury on the child.
This court finds that contrary to the respondent-mother's assertions there is no statutory or other legal requirement that a parent actually admit to inflicting injuries on a child in order for the court to properly find that parent culpable of severe abuse pursuant to the Social Services Law 384-b (a)(i). What is required is a finding by clear and convincing evidence 1) that the child is an abused child as a result of the parent's reckless or intentional behavior committed under circumstances evincing a depraved indifference to human life, and 2) that the child suffered serious physical injury as that term is defined in Penal Law §10. Both elements have been clearly established in this case as to the respondent-mother. The first element is established by the respondent-mother's Supreme Court admission and conviction on a charge of first degree reckless endangerment. Penal Law §120.25 states that a person is guilty of first degree reckless endangerment "when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." The second element is established by the uncontroverted and compelling medical records detailing the child's numerous and serious physical injuries.
Despite the respondent-mother's asserted desire to challenge the medical evidence submitted and to cross examine the makers of the medical records, she has not indicated in her submissions that she has actually secured any probative admissible evidence to challenge the medical records submitted. Instead, she merely asserts a vague desire to challenge the evidence presented. The respondent-mother's post-guilty plea assertion that she was "brainwashed" and "isolated" by the co-respondent and her desire to challenge evidence and cross examine witnesses does not take away from the fact that there has been properly submitted in this case uncontroverted legally admissible medical proof from two separate hospitals which establish the clear fact that this very young child suffered serious physical injury. The respondent-mother was represented by counsel in her criminal proceedings and pleaded guilty after proper court [*7]allocution. In no way does she deny the criminal court findings or her own actions which resulted in such findings.
When a moving party has demonstrated that it is entitled to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a triable issue of fact or tender an acceptable excuse for failing to do so, and the submission of a hearsay affirmation of counsel alone does not satisfy this requirement. Zuckerman v. City of New York , 49 NY2d 557 (1980). Unsubstantiated allegations do not raise triable fact issues and will not defeat entry of summary judgment in appropriate cases. In the Matter of Jimmy A., 218 AD2d 734 (2d Dept. 1995). Indeed, if one were to take the respondent-mother's argument in this regard to its logical conclusion, the mere assertion of a desire to challenge the proof submitted in support of a summary judgment motion would be sufficient to defeat the motion and if that assertion is made the court would never have the ability to grant such motions under any circumstances.
Unlike the situation with the respondent-father, the agency has made diligent efforts to encourage and strengthen the parental relationship between the respondent-mother and the child pursuant to Social Services Law 384-b(a)(8)(iv). The permanency planning report in evidence in this matter, dated July 16, 2007, reflects that the agency has provided the respondent-mother with caseworker counseling upon her release from prison, and has monitored her progress in the treatment she received while incarcerated. The agency has further sent the respondent-mother correspondence which encouraged her to contact the agency. The agency has referred the respondent-mother for a mental health evaluation, individual counseling, and a parenting skills program for young mothers. The respondent-mother completed a parenting skills program. These actions by ACS clearly constitute diligent efforts to encourage and strengthen the parental relationship and to rehabilitate the respondent-mother. However, these efforts are highly unlikely to be successful in the foreseeable future. It is also quite likely that these efforts may indeed be detrimental to the ultimate best interests of the child. This is particularly true in light of the reality that during the pendency of these proceedings there has been a Supreme Court order of protection prohibiting the respondent-mother from having any contact with the child and that order was only very recently modified to permit Family Court ordered contact with the child. The Supreme Court order of protection prevented the respondent-mother from establishing any relationship with the infant child she severely abused. It also prevented the foster care agency from making an assessment as to whether there exists any remaining parent-child relationship to rehabilitate. As a consequence of the order of protection, the respondent-mother has had no contact with this child for over one year. For the majority of this child's young life and critical development period he has not seen or been cared-for by the respondent-mother and has established a bond with his pre-adoptive foster parent. Additionally, the permanency planning hearing report reflects that the respondent-mother began individual therapy but missed two sessions without contacting her therapist. Furthermore, the respondent-mother's continued denial of her role in the severe abuse of her young infant is clearly detrimental to the child's ultimate best interests.
Decision
There are no genuine or material triable issues of fact in this matter. Pursuant to CPLR §3212, this court hereby grants ACS's motion and enters summary judgment findings of child abuse pursuant to Family Court Act §1012(e), aggravated circumstances pursuant to Family [*8]Court Act §1012(j), and severe abuse pursuant to Social Services Law §384-b(8)(a)(i) and Social Services Law §384-b(8)(a)(iii).
This constitutes the decision and order of the court.
ENTER:
_____________________________________
EDWINA G. RICHARDSON-MENDELSON
Judge of the Family Court
Dated:Jamaica, New York
August 3, 2007